442 P.2d 31

Epifanio GALLEGOS, Plaintiff and Appellant,

v.

Bryce J. STRINGHAM, Defendant and Respondent.

No. 11056.

Supreme Court of Utah.

June 6, 1968.

Kunz & Kunz, David S. Kunz, Ogden, for plaintiff and appellant.

Ray, Quinney & Nebeker, Stephen B. Nebeker, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

This is an appeal by the plaintiff from a directed verdict in favor of the defendant. The only issue involved is whether both plaintiff and defendant were working for the same employer at the time when the defendant injured the plaintiff. There is no dispute in the facts of the case. The dispute arises over the legal effects to be given those facts.

A determination of this matter involves the construction of Sec. 35–1–42, U.C.A. 1953, which so far as material reads:

> Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer. Any person, firm or corporation engaged in the performance of work as an independent contractor shall be deemed an employer within the meaning of this section. The

term "independent contractor," as herein used, is defined to be any person, association or corporation engaged in the performance of any work for another, who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design.

Various cases involving the right to compensation insurance have been before this court when a person claimed to be in the employ of an employer covered by workmen's compensation insurance. However, so far as we are aware this is the first time we have been called upon to decide whether a plaintiff was injured by an independent contractor or by a fellow employee.

Gibbons & Reed Company as employer of plaintiff had a contract to lower the grade of a street in Ogden City. After the street had been excavated to the new grade level, the dirt was "winrowed" in the middle of the street, where it was picked up by a traxcavator and loaded into dump trucks, to be hauled to a destination determined by Gibbons & Reed.

The defendant owned a large truck and orally contracted to furnish it, including a driver, to Gibbons & Reed Company, at a price of ten dollars per hour while in use. All expenses in connection with the truck, including the salary of a driver, were to be borne by the defendant. He had the right to drive the truck himself if he wished to.

Gibbons & Reed Company did not list the driver of the truck on their payroll and made no deductions from the truck rental for social security, income taxes, union dues, and so forth. No W–2 payroll form was given by Gibbons & Reed Company to the driver or drivers of the truck at the end of the year. The defendant was paid every two weeks for the hours his truck was used on the job, while the regular employees of Gibbons & Reed Company were paid weekly, with deductions made from their salary checks for social security, income taxes, union dues, etc.

It will be noted that the defendant did not have a contract to haul the dirt from the street to a point of dumping at his own convenience. He had to maintain his position in a line of trucks which were similarly engaged in hauling dirt for the contractor. Defendant was told when to speed his trips and when to back up to the traxcavator and when to drive away, and he could not haul dirt in any other manner than as he was told. However, he did not have to haul any dirt and could quit at any time he desired. If the driver of the truck failed to maintain his position in line, the foreman of Gibbons & Reed could stop the truck from hauling.

In this case Gibbons & Reed procured work to be done by the defendant, to wit, hauling dirt, which work was a part of the business of Gibbons & Reed. Gibbons & Reed retained supervision over the work being done by the defendant.

In the case of Angel v. Industrial Comm., 64 Utah 105, 228 P. 509, Angel, a general contractor, hired Scoubye to mix and pour cement for five cents per cubic yard. Scoubye hired his own employees, whose wages were paid by Angel and thereafter deducted from the five cents per cubic yard due Scoubye. Angel supervised the pouring of the cement to see that it was properly done and made suggestions when he thought they were needed. When Scoubye was injured on the job, he sought to be covered by the workmen's compensation insurance carried by Angel. This court held him to be an independent contractor and not an employee of Angel. That case differs from the instant one in that Scoubye had a contract to pour the cement as the walls were being erected, and Angel had no control over the work except to see that it was done in a workmanlike manner. It would have more nearly approached the instant case factually if Scoubye had been directed by Angel when and where to pour each hopper of cement.

Another case seemingly similar on the facts to the instant one is Luker Sand & Gravel Co. v. Industrial Comm., 82 Utah 188, 23 P.2d 225. There the Luker Sand & Gravel Co. had the contract to furnish the sand used in the erection of the Veterans' Hospital and the Miners' Hospital under construction. One Hobbs was hauling sand from a pit to the hospital sites. He was paid by the cubic yard and was directed which site to deliver the load to when his truck was loaded. The price paid him varied between the two locations of delivery. The route traveled and the number of hauls made were of no concern to Luker Sand & Gravel Co. There were other trucks in use, and whether the Hobbs truck quit or returned was entirely up to Hobbs. He furnished his own driver and paid him a percentage of what he received from Luker Sand & Gravel Co. On one trip a driver of Hobbs was killed. The Industrial Commission ordered the State Insurance Fund to pay some money on the theory that the driver worked for Luker Sand & Gravel Co. This court reversed, holding that the deceased driver was not an employee of Luker Sand & Gravel Co.

The instant case is distinguished from the Luker case because here Gibbons & Reed Company did direct and control the movements of the truck and the pay was by the hour and not by the cubic yards hauled. Gibbons & Reed would thus be decidedly interested in the number of trips made by Stringham.

A case cited by appellant similar to Luker, supra, is Kinder v. Industrial Comm., 106 Utah 448, 150 P.2d 109 (1944). The

language used at page 450 of the Utah Reports, at page 110 of 150 P.2d points out the difference from the instant case:

> * * * If the trucker desired they could interrupt the hauling for the Company and haul for third parties. They could call at the Company pits and would be permitted to haul at the agreed price per yard whenever the Company had gravel to haul. There was no requirement that drivers haul a minimum number of loads per week or per month. They could haul but one load per day or more if they desired. The only control over the work of the truckers which the Company maintained was the right to direct where to load and where to unload.

The case of Utah Fire Clay Co. v. Industrial Comm., 86 Utah 1, 40 P.2d 183 (1935), is similar to the instant case. There, Utah Fire Clay Co. had a contract with one R. S. James to deliver its products to its customers. The manager of Utah Fire Clay in answering a question as to whether the company attempted to exercise any control over the details of the work of trucking or the way it should be done stated, "Outside of the general routine that would naturally come up in a case of that kind, no." And again, "Except as a superior in the way he would handle those jobs." James paid his own drivers from his earnings received from Utah Fire Clay Co. At times the company would direct the route to be followed by the drivers in making deliveries. At other times the drivers would select the route of travel themselves. This court in holding an injured driver to be an employee of Utah Fire Clay Co. said at page 7 of the Utah Reports, at page 186 of 40 P.2d:

> Under the contract and the other evidence before the commission it was apparent that the work James contracted to do was "a part or process in the trade or business" of the company, and that the company retained the right of supervision and control over the work and every process and detail connected therewith. The test, of course, is the right of the employer to supervise or control, whether such control or supervision is exercised or not. The evidence shows the company not only claimed such right, but actually asserted it at its pleasure, and that James and his employees recognized the right of the company so to do. They acquiesced therein by compliance with orders, directions, and suggestions made by the shipping clerk and plant superintendent of the company.

In the instant case Gibbons & Reed had full control of the defendant's truck and directed the driver, whether it was Stringham or his employee. The work done by the defendant and his truck was the very work being performed by Gibbons & Reed Company pursuant to its contract with Ogden City. Because Gibbons & Reed paid ten dollars per hour for the use

of the truck, including the driver, it could not afford to let the driver determine the amount of work to be done. Such a rate of pay justified and made necessary the control of the movement of the truck by the company.

We, therefore, hold that the defendant was an employee of Gibbons & Reed Company within the meaning of Sec. 35–1–42, U.C.A.1953. This being so, the plaintiff must look to workmen's compensation insurance coverage and is prevented by Sec. 35–1–60 from suing the defendant in this case.

The judgment of the trial court is affirmed. No costs are awarded.

CALLISTER and TUCKETT, JJ., and JOSEPH E. NELSON, District Judge, concur.

CROCKETT, Chief Justice (concurring).

I concur in affirming the ruling of the trial court that under the facts shown the plaintiff was an employee of Gibbons & Reed and thus dependent upon workmen's compensation. However, I think it appropriate to call attention to the fact that the question of employer-employee relationship as compared to independent contractor is sometimes fraught with considerable difficulty and may involve consideration of a number of factors in addition to the apparent right of control. See Christean v. Industrial Commission, 113 Utah 451, 196 P.

2d 502; Stover Bedding Co. v. Industrial Commission, 99 Utah 423, 107 P.2d 1027, 134 A.L.R. 1006, particularly the able and thorough treatment of the subject in Justice Wolfe's dissenting opinion; and see also Sutton v. Industrial Commission, 9 Utah 2d 339, 344 P.2d 538.

HENRIOD, J., not participating herein.