Scott **GOURDIN**, a minor By and Through his guardian ad litem Wayne C. **CLOSE**, Plaintiff and Appellant,

v.

**SHARON'S CULTURAL EDUCATION RECREATIONAL ASSOCIATION (SCERA), Defendant and Appellee.**

No. 900523.

Supreme Court of Utah.

Dec. 28, 1992.

---

Brent D. Young, Provo, for plaintiff and appellant.

Richard K. Glauser, Jaryl L. Rencher, Salt Lake City, for SCERA.

DURHAM, Justice:

Plaintiff Scott Gourdin appeals from a directed verdict granted in favor of defendant Sharon's Cultural Educational Recreational Association (SCERA) in an action for negligence. Gourdin, a minor child, brought suit through his guardian ad litem for injuries he sustained while mowing a lawn on SCERA's premises. His claims against the manufacturer, wholesaler, and retailer of the mower were settled out of court and are not before us.

Gourdin was seven years old at the time of the accident, which occurred while he was accompanying his father, a SCERA maintenance manager, at work at a SCERA facility. The trial court granted defendant's motion for directed verdict, concluding as a matter of law that Gourdin was an employee whose sole remedy was workers' compensation under Utah Code Ann. § 35–1–60. We now reverse.

We note at the outset that this is a standard of review case, turning on the propriety of the directed verdict. Had this been a bench trial or a jury verdict, we would affirm the result because we would apply a more deferential standard of review. However, on appeal from a directed verdict, "[w]e must examine the evidence in the light most favorable to the losing party, and if there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in favor of the losing party, the directed verdict cannot be sustained." *Management Comm. v. Graystone Pines*, 652 P.2d 896, 898 (Utah 1982) (footnote omitted). Under that standard, we cannot uphold the directed verdict, nor can we agree with SCERA's contention that the directed verdict, if erroneous, was harmless.

Although the evidence at trial was largely undisputed, considerable controversy surrounds the inferences to be drawn from that evidence. The crucial determination is whether Gourdin qualifies as an employee under the Workers' Compensation Act, in which case his negligence action would be barred. Utah Code Ann. § 35–1–60. The jury must base that determination on the facts adduced at trial, applying the legal test articulated by the trial court in its jury instructions. Whether the factual inferences to be drawn from the evidence meet the legal definition of "employee" under the Workers' Compensation Act is a question for the jury. The trial court's function is to instruct the jury on the legal standard but leave the jury to apply the standard to the facts as it finds them.

■ The evidence, viewed in the light most favorable to Gourdin, reveals the following: At three or four years of age, he began accompanying his father to work at SCERA. Later, according to his father, he "usually came every day and worked for a couple of hours." However, he was never interviewed by anyone with authority to hire on behalf of SCERA, nor did he have an application on file, as was usually required for both paid and volunteer staff members. In fact, SCERA's president testified that he did not consider Gourdin a staff member. Gourdin was not paid for his work, but received free use of the SCERA pool and theater; however, he was entitled to use these facilities simply by virtue of his father's employment there. SCERA volunteers were typically offered free theater passes, swimming privileges, and discounts on purchases. Gourdin testified that he did not receive free passes of any sort but merely had access to facilities.

SCERA contends primarily that Gourdin was an employee when he was injured. Gourdin, on the other hand, argues that he was acting in a volunteer capacity.[1] If Gourdin was an employee at the time of the accident, then workers' compensation would be his exclusive remedy. Utah Code Ann. § 35-1-60. Alternatively, if he were anything other than an employee, he would be entitled to pursue his negligence claim against SCERA because the Workers' Compensation Act would not apply. *See, e.g.,* *Board of Educ. of Alpine School Dist. v. Olsen,* 684 P.2d 49, 50-51 (Utah 1984). The Workers' Compensation Act defines an employee as

[a] person in the service of any employer ... who employs one or more workers or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, including aliens and minors, whether legally or illegally working for hire, but not including any person whose employment is casual and not in the usual course of trade, business, or occupation of his employer.

Utah Code Ann. § 35-1-43(1)(b). In *Olsen,* this court set forth several factors to be considered in determining whether an employment relationship exists. We noted that "an employee is hired and paid a salary or wage, works under the direction of the employer, and is subject to the employer's control. We have also considered the intent of the parties and the business of the employer." *Id.* at 52 (citations omitted).

■ These factors (compensation, direction and control, intent, and business context), borrowed from case law distinguishing between employees and independent contractors, shape the inquiry into the employment relationship; however, all need not be present to support a finding of employee status. As noted in earlier cases, no single factor is completely controlling. *Rustler Lodge v. Industrial Comm'n,* 562 P.2d 227, 228-29 (Utah 1977) (citing *Sutton v. Industrial Comm'n,* 9 Utah 2d 339, 344 P.2d 538, 540 (1959)); *Harry L. Young & Sons, Inc. v. Ashton,* 538 P.2d 316, 318 (Utah 1975). Moreover, employee status is not determined by its dictionary definition, but rather by "whether the facts and circumstances bring [the worker] within the requirements of the Workmen's Compensation Act." *Harry L. Young & Sons,* 538 P.2d at 318.

Accordingly, Gourdin's relationship to SCERA turns on an analysis of the criteria in the statute and in *Olsen.* For some factors, the analysis is relatively straightforward. For example, there is no dispute that the organization regularly employed workers to mow its lawns. Similarly, Gourdin concedes that he was under his father's supervision in performing his work.

As to other criteria, however, the facts are subject to various interpretations. First, although Gourdin was not paid a wage, he did receive some benefits from SCERA. Whether he received those benefits as compensation for his own work or

---

1. On appeal, Gourdin urges this court to create the category of "gratuitous servant." We decline to address this issue because it was not raised at trial. *See Zions First Nat'l Bank v. National Am. Title Ins.,* 749 P.2d 651 (Utah 1988).

by virtue of his father's employment is a question of fact properly within the province of the jury.[2] Second, the evidence concerning the intent of the parties is also susceptible to differing interpretations, depending upon the credibility of the various witnesses. Again, these questions of fact are for the jury to decide. Finally, whether Gourdin's father's supervision of his work was parental or managerial is also a jury question.

As described above, numerous possible inferences are available to the fact finder. Therefore, we cannot say, as the trial court concluded, that Gourdin was an employee as a matter of law. We recognize that this is a complicated case; while the facts are fairly straightforward, the possible *inferences* to be drawn from those facts are mutually inconsistent. In granting a directed verdict, the trial court confused the function of making factual inferences with the function of applying the legal standard for "employee." Consequently, we must remand to permit a jury to make a factual determination of Gourdin's relationship to SCERA. At a new trial, special interrogatories might be an appropriate means of eliciting the bases for the jury's conclusions, with particular emphasis on each of the factors necessary to the analysis. For example, the jury could be asked whether Gourdin would have been entitled to use SCERA's facilities had he not performed work for SCERA. Similarly, it might consider whether Gourdin's father supervised and directed Gourdin's lawn-mowing activity in his role as a parent or as a SCERA manager.

If the jury concludes that Gourdin was indeed an employee, then workers' compensation will be his exclusive remedy. Utah Code Ann. § 35–1–60. However, should they find that he was a volunteer, his negligence claim should be duly considered.

Of course, the jury is not restricted to those two alternatives. SCERA contends that if Gourdin was not an employee, then he must have been a trespasser, to whom it owed no duty. Consequently, it argues, any error resulting from the directed verdict was harmless. However, categorizing Gourdin as a trespasser is only one of several possible conclusions the jury might have reached. Because those conclusions would have resulted in divergent outcomes, the directed verdict could not possibly have constituted harmless error.

■ Gourdin also argues on appeal that the policy underlying the Workers' Compensation Act excludes volunteers. We reiterate our holding in *Olsen* that volunteers are not covered by workers' compensation unless specifically authorized by statute. 684 P.2d at 51. Because nothing in the record suggests that Gourdin would fall within any of the categories of volunteers covered by workers' compensation,[3] we need not treat his public policy arguments.

Reversed and remanded for a new trial.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

---

2. Indeed, the trial court was troubled by the compensation issue. SCERA first moved for a directed verdict at the close of Gourdin's case, but the court delayed ruling, noting that it was uncertain whether the benefits Gourdin received constituted compensation. The court granted the motion after SCERA presented part of its case, including evidence that all "volunteers" received free passes and other benefits.

3. For example, the Volunteer Government Workers Act provides that volunteers working for state and local agencies are considered government employees for workers' compensation purposes. Utah Code Ann. § 67–20–3.